Good morning, your honors. If it pleases the court, Ms. Stewart. Actually, her name is Maria Moe, M-O-E, yes. Sounds more distinguished the way Judge Clifton calls it. We bring three claims before the court this morning, the first being a sufficiency claim, and that's where I'll begin. It's my belief that this case should have been dismissed at the Rule 29 stage. There was insufficient evidence to prove any agreement of a conspiracy to distribute methamphetamine. I think the government had high hopes for some overarching conspiracy here, namely the one that was alleged in the indictment. But the proof just didn't bear that out. Let me put the government's proof, I think, in the most favorable light and ask you to respond to it. There's a fair amount of methamphetamine sold here. I'm not clear whether it's more than enough for personal use or not, because there doesn't seem to be much evidence in the record about that. But on at least several occasions, your client shows up with somebody else to purchase the methamphetamine, and she is referred to by that other person, who I think the record calls in a sort of a lyrical way the preppy guy, as the money. Is that enough? In other words, there's some indication in the record that she's supplying the money to buy the methamphetamine, and with her is somebody else involved in the scheme in some way. I think that's stating the government's case in its most favorable light. I don't see, although the briefs speculate that she was called Montana because she was distributing in Montana. When I look at the record, all I see is that she's from Montana, and the dealer doesn't say that's why he called her Montana. He just says, I called her Montana. So those facts, the facts that she shows up with someone else, purchases fairly large quantities, and that other person refers to her as the money, is that enough to get the conspiracy case to the jury? And if not, why not? I think I'll pick up on the Court's last point about her being called Montana and your Honor's indication that she was distributing in Montana. I don't put any weight on that because I don't find any evidence in the record that that's why she was called Montana. Maybe I'm wrong about that. But go ahead. You can respond to it if you want. I would suppose my point would be that there's no evidence in this record that methamphetamine was distributed by her. You went on that point as far as I'm concerned. I'm asking a different question. The question is, we know she bought methamphetamine, no doubt about it. We know she bought fairly large quantities of methamphetamine over an extended period of time, and we know that at least one occasion she shows up with somebody, or more than one occasion she shows up with somebody else, and that person refers to her as the money. Respond to that. Why doesn't that show conspiracy? I think the record bears the interpretation that on the occasion to which the court makes reference, she was not part of that deal. There may have been some indication that she was present, and even that I would dispute. The government's proof on her being present in Spokane consisted of being at a gas station and the shopping mall. They never placed her at the house with Mr. Ellifrit on a specific occasion, other than the fact that Mr. Ellifrit said that Mr. Ellifrit being red, other than the fact that he said that she came and purchased methamphetamine from him in a total sum of 140 grams over 8 to 10 times, I think is the number of transactions. Mr. Ellifrit testifies, I think, that the preppy guy, I like the term, the preppy guy shows up and says she's the money. Respond to that. I mean, we have to take his testimony as true. I understand he's a drug dealer and an informant, but we have to take his testimony as true. If she is the money to purchase methamphetamine and somebody else is coming to get it, if you will, is that enough to give rise to enough evidence to go to the jury on conspiracy? No. Well, let me go to some other points then to follow up with my colleague here. I see a number of things in the record that seems to give enough to the jury to convict, but let me just ask you about them. Mr. Ellifrit said that she began obtaining methamphetamine from him because she was tired of traveling to California. He said that he sold her approximately half an ounce of methamphetamine on five or six occasions. He brought another man who bought between $1,200 and $1,300 of methamphetamine on two occasions. In total, he testified that she bought or facilitated the purchase of methamphetamine about ten times between the end of 2009 and the end of 2010. And very importantly, when the law enforcement people interviewed your client, she admitted that she had been involved in methamphetamine trafficking. That's at ER 246 through 252. Why is that not sufficient evidence to convict her? I think now I have to go back, retrench here a little bit maybe from the sufficiency claim and wire in the two other claims presented in the brief. And that was the trial fair here. The government's theory or theme of this case was that she was distributing, buying and distributing methamphetamine in Montana and elsewhere over a considerable period of time. And they just didn't prove that. Maybe the theory was you've now retrenched from your sufficiency claim, but you've gone right back to it. Right. But it sounds like, remember, deciding the sufficiency is something where the deck is really stacked in favor of the verdict. Oh, I recognize that. So you tell us you want to talk about the other claims. What's the problem? Let me think about it this way then with the court. If you look at the two decisions that are cited here, and I don't know if the court is on this page or not, but giving a focused look at this, if you look at the Kenney decision from this court and the Aguilano decision from this court, both of which are cited in the government's papers, Aguilano is cited and in my brief, Kenney is cited. Kenney says quite plainly that multiple conspiracies is really a sufficiency of the evidence question. We've got a single defendant here. Well, but Aguilano, on the other hand, hear me out, please, Your Honor. Aguilano, on the other hand, says that you can't make the multiple conspiracies argument in a context like the one here where there's a single defendant. I think those decisions work at cross purposes with each other, and that's why we wind up here today, and I think that presents a substantial question to the court. But you keep swinging for the home run. Can I ask you a question about your singles argument? Sure. Which is the buyer-seller instruction. Sure. Would you spend some time on that and tell us why you think the district court erred in not giving that instruction? Well, I think that's part and parcel of my argument. No, no, separate it from the other part of your argument. Let's assume you lose in a home run derby. My question is, do you get a new trial? Well, respectfully, Your Honor, I was clearly entitled to that instruction. I think that the government expected Mr. Elephant to come on and testify in a manner differently than he did. Is there any case law from our court or any other, well, in this case, the Supreme Court, that says that in this case you're entitled to a buyer-seller instruction? Now, the honest answer to that is the best I could do on that. There isn't. But the Seventh Circuit is strong on it, and I cited those cases. And a lot of the other circuits are to the contrary. But is it not true that what you're really dealing with is that the general instruction, which was given here, covers the situation? You can ask for that in the buyer-seller instruction, but at least under the circumstances here, the jury was told what it needed to if it wanted to find that there was just a buyer-seller transaction, right? Well, I think that's a fair statement, Your Honor, as far as it goes. But at the end of the day, you know, the defense is entitled to something in the nature of an instruction that will make the deliberation process a focused exercise. That was your theory of the case. If you put that before the jury, that this wasn't this overarching conspiracy, the government has to prove what it alleges. Respectfully, they have to prove what they allege. They alleged a conspiracy that had great parameters to it, and they didn't prove that. They proved, if anything, that a woman was coming from Montana to Spokane, some total of eight to ten occasions where she purchased approximately 140 grams of methamphetamine. And she admitted to law enforcement that she'd been involved in methamphetamine trafficking. She admitted that by her own testimony. Why isn't that enough? Because the proof said through the agent on the cross, Agent Poteet, he was the government's first witness, that those things were completely separate and apart, and they weren't wired into this Spokane business. They were something that had nothing to do with this. Thank you, Your Honors. Thank you. Good morning. May it please the Court. I'm Paulette Strupp from the United States Attorney's Office. Your Honor and counsel, the government proved beyond a reasonable doubt, and there was sufficient evidence for the jury to convict Ms. Moe as charged in the indictment. So again, tell me what the evidence was that showed conspiracy. In addition to what we've got the preppy guy, I'm not sure, and your opponent says that the admission to federal authority is related to prior activity and not to this activity. What else is there? Well, there is her admission, and really her admission is. And that's where in the record? That is at, I believe it's 247. Okay. Where she was involved, the statement she made to Agent Poteet was she was involved in meth trafficking with suppliers from California, Washington, and Montana, and then she continued to talk about her previous suppliers, but notably who she didn't talk about was her present source of supply, Mr. Ellifrit, that she went to herself and said, I want to cut out the preppy dude. I want to buy my methamphetamine straight from you because I'm tired of traveling to California for my methamphetamine. So I want to come directly to you to obtain this methamphetamine and take it back to Montana. I am tired and basically can frankly cut my travel time. So you think combined with her admissions that she was involved in the business, that her admissions about why she turned to this supplier are enough to indicate a conspiracy? Yes, sir. Yes, Your Honor. Who's in this conspiracy? Who are the people? The people in this conspiracy, I guess really how it started was the preppy dude with Ms. Moe and Mr. Ellifrit. So you've told us she's trying to cut out the preppy dude. We did cut out the preppy dude. So who's left in the conspiracy? So then who's left in the conspiracy is Ms. Moe because she did cut out the preppy dude. With whom? She wanted him. She has to have an agreement with someone. Who does she have an agreement with? And then she's got the agreement with Mr. Ellifrit. Well, what do you have for his participation? I take it you're not alleging that the sale from him to her is the unlawful transaction that's the subject of the conspiracy? No, it's the further on down the line because then she... So what do we have to link him to that? Because then what we also have is Ms. Moe over the course of this year bringing to at least half of the transactions then Ms. Stewart who basically is there for half of her drug runs to obtain methamphetamine to bring it back to Montana. And then the other part of this... It's my understanding of the law that you need more than the fact that the quantities were large. Or what is your position as to the law? Is the fact that the quantities are large enough? We have it large enough. We've got their prolonged agreement and their cooperation. We've got their level of mutual trust. Stop, agreement. What's the agreement? The agreement is for Ms. Moe to come to Mr. Ellifrit to obtain methamphetamine to take it back to Montana for redistribution. What is his interest after his sale? What's his interest in what happens later? What agreement or evidence of agreement on his part? Did he do anything to facilitate her subsequent distribution? He did not. He had other connections in Montana but basically that were not mutual with Ms. Moe. See, we've got precedent. It's the U.S. versus Lennox. To show a conspiracy, the government must show not only that Lennox gave drugs to other people knowing they would further distribute them, but also that he had an agreement with these individuals to so further distribute the drugs. What do we have to suggest the so further distribute the drugs part? Well, the further distribute of drugs is their continued communication, their text messages. How can we take from that any more than he just wanted to sell her as much as she wanted to buy? I think because she kept coming back. They did. They kept in constant contact. There were lots of text messages and phone calls between them. And I've read what's in the record about them, but Judge Clift asked a different question. He said, what evidence is there to show that Efrid had any stake in the sale, the further distribution of the meth, other than that she was a good customer? Is there any evidence at all of that? No, he did not direct her further sales. She went and sold and then continued to come back. If he'd been the Costco of methamphetamine, illegal Costco of methamphetamine, and sold to anybody who came who wanted to buy as much as they could, that wouldn't show a conspiracy between him and a buyer, would it? No, you're correct. So if the conspiracy is not with Efrid, who is it with? It is with Elfrid. It's with Mr. Elfrid. I know I have his name wrong. I'm sorry. And with, like I said, Ms. Mo and then Ms. Stewart, who then accompanied and came. Okay, so tell me what the evidence about Ms. Stewart is that she accompanied and came and then did what? And there was an introduction between Stewart and Elfrid, and I believe at one point he described her as the lady who looked like the man. But Ms. Mo is bringing and making additional introductions. I think there's no reason for Ms. Stewart to be there, other than that she is a part and parcel to this conspiracy. Isn't it equally possible on this record that Ms. Mo says, I have a great dealer in Spokane, Ms. Stewart? You want meth too? Let me introduce you to him. He's my source. What's the evidence that they're conspiring together to distribute it? Well, I think the evidence was Ms. Mo's statements, but then it's also the fact that Ms. Mo is trying to, when she's talking to Mr. Poteet about what's going on, is that she's trying to wipe out her local competition. She's saying, look, there are these other people dealing in Helena. So if she's not purchasing methamphetamine from these other dealers in Helena, what that means is that she is taking the methamphetamine from Mr. Elifrit from Spokane to Helena and is distributing it to Ms. Stewart as part of her conspiracy. I don't want to cut you off on that argument, but I'm interested in the buyer-seller instruction, because it seems to me that the meat of the defendant's argument in this case is, you want to prosecute me for possession of methamphetamine with intent to sell, that's okay because there's pretty much a lot of evidence of that, but that's a different charge than conspiracy. And why shouldn't the judge instruct the jury on the central theory of the defense for which there is some support in the record? You know, Your Honor, I think the reason why the district court did not instruct on the buyer-seller as requested by the defendant is I don't think that the district court thought it was a close call. I think the district court, subsequent to the Rule 29 motion, didn't think that it was a close call and therefore didn't instruct on the buyer-seller. But what if we think on this record that it is a close call on conspiracy, that you've got enough to get to the jury, but it's not the best conspiracy case you've ever had. You may have enough to get to the jury and the jury might well convict, but she gets to make her argument that I'm just an ordinary meth buyer and seller, not a conspirator. Why shouldn't she get to make that argument? Well, she did make that argument. Well, but why shouldn't the judge tell the jury that that argument is a good one, and if you find that, you shouldn't convict her of conspiracy? I understand, Your Honor. And I think the reason the district court did not do that is because the district court viewed the Ninth Circuit stock instruction as adequate as to that point, as to what a conspiracy was or was not, and that basically the additional instruction was not necessary as a result of it. Why should we have confidence that the jury didn't get confused and take the purchase by her from Ellifrit as the unlawful action that supports the conspiracy claim? I mean, you've acknowledged that that sale isn't it. It's a subsequent distribution that would support the conspiracy claim, but I look at the standard instruction and say in this context, am I confident that the jury didn't say, well, we obviously know there was a sale from Ellifrit to Moe. That's unlawful. That's conspiracy. No, because I think the instruction is clear that what a conspiracy is the agreement to do that unlawful deal. Agreed to the deal. That is the agreement. And so I don't think that there is any confusion, and the presumption is that the jury followed the law and the instruction given it, which is that it had to find the agreement, and I think that that's what happened in this case. Well, there clearly is an agreement in that transaction. I go to buy a car. I've got an agreement with the dealer. That can't support a claim for conspiracy to buy a car. In this case, there was a sale of the drugs from Ellifrit to Moe. There was an agreement as part of that sale, but the conspiracy claim has to be built on future distribution. Correct. Does it really seem that clear from the standard instruction that that first sale can't be the one that supports the conspiracy claim? I think the answer is yes, Your Honor. Okay. In this particular case, at least at ER-178, it looks like the jury was specifically instructed that all members of the conspiracy had to agree to the specific crime. I gather that, plus the definitions and the general instruction from the government's perspective, is sufficient. Yes, Your Honor. Okay. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Clifton, Smith, Hurwitz